Read, J.
This bill is brought to reverse a decree had under the act of March, 1842, regulating the mode of collecting debts against turnpike companies, in which the state is a party, etc. The decree subjected the entire tolls. The act provides that the receiver appointed to collect the tolls, after paying the expenses of the necessary repairs of the road, shall, on the order of the auditor of the state, pay into the state treasury the amount which may be due the state, in proportion to the number of shares of stock, and the balance, after paying costs, to be applied in satisfaction of the dbcree in favor of the creditor filing his bill. How, then, can a decree, in the face of this act, be rendered, subjecting the tolls of the state to the payment of the debts of the company ? To do so, is to declare this act invalid. This only could be done upon the ground that the act is in violation of some provision of the constitution. It is said that the state, having embarked with the company, under the act of March 24, 1837, authorizing subscriptions by the state *to the capital stock of turnpike companies, is responsible for the debts of the company.
That act conferred no authority upon the company to contract debts binding upon the state. So far as the state was concerned, it was to be a cash business. The state subscription was to be paid just as fast and in amount equal to payments upon private subscriptions. As the value of a road depends much on its length, *408 the whole theory of state subscription was simply this : The state say to the company, “ Just as much good turnpike road as you will build, the state will furnish you money to build just so much more in addition.” It makes no difference whether the state owns a divided half or undivided half of the road. One owner in common, or joint owner, is not permitted to apply the whole joint property or its proceeds to the payment of his individual debt. No builder of the road, or creditor of the company, is taken by surprise in this matter, because, had they looked to the statute, they would have perceived that the state bound herself to pay just so much, and they had no right to presume she would pay more. It would have been perceived, moreover, to have been the interest of the state that the road should be completed as it went along, or, at least, that no debt should be contracted binding upon her; because it is expressly provided that the state shall stop payment the moment the company fails to pay cash. As the company pays, so will the state. Now, it would bo marvelous, indeed, if the company, after the state had stopped payment, could go on and contract debts which reflect back and exhaust the property of the state already acquired. Indeed, I fear we shall be compelled to believe that this act was rightly named the plunder law.
The truth is, the principles of joint stock companies and partnerships have nothing at all to do with the matter. The state had the right to say how far she would be liable, and in»what manner this was done by public act, which was notice to all the world. The act which we are called upon to enforce, simply proteets the property of the state, cuts the company Uoosefrom the public treasury, and compels it to pay the debts of its own contracting, out of its own property. This is thought to be quite unconstitutional.
The court do not view it in that light. We therefore execute the law, and reverse the decree.